UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EUGENIA MERCADO,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | Civ. No. 18-17422 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Eugenia Mercado, seeks review pursuant to 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Social Security disability benefits under Title II and Title XVI of the Social Security Act based on various physical and mental ailments. For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND**[1]

**Procedural History**[2]

On October 8, 2015, Ms. Mercado filed applications for disability and supplemental security income benefits on October 8, 2015 for disabilities with

---

[1]     Citations to the record are abbreviated as follows:

    "DE _" = Docket entry in this case

    "R. _" = Administrative Record (DE 7) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 7 attachments)

    "Pl. Br." = Ms. Mercado's Brief (DE 17)

    "Gov. Br." = Commissioner's Brief (DE 20)

[2]     In her brief, Ms. Mercado relayed a procedural history of this case which appears to be from a different Social Security matter which was before Administrative Law Judge Olarsch. (*See* Pl.'s Br. 1–2.) Plaintiff's counsel is requested to exercise more care in the future.

an alleged onset date of December 31, 2007. (R. 10.) Her claims were initially denied on February 29, 2016, and denied again upon reconsideration on March 31, 2016. (*Id.*) A hearing was then held before Administrative Judge Ricardy Damille ("ALJ Damille") on October 13, 2017, and ALJ Damille issued his decision on January 3, 2018, upholding the denial of disability because Ms. Mercado was capable of working pursuant to step five of the sequential evaluation. (R. 7–22.) Ms. Mercado commenced this action on December 19, 2018. (DE 1.)

## II. DECISION FOR REVIEW
### A. The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. In doing so, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923, 416.924a(b)(4), 416.926a(a) and (c). If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the

2

claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Decision

The ALJ applied the five-step framework.

At step one, the ALJ found that Ms. Mercado had not performed substantial gainful activity since the alleged onset date of December 31, 2007. (R. 13.)

At step two, the ALJ found that Ms. Mercado had the following severe impairments: fibromyalgia, lumbar facet joint arthropathy, sciatica, obesity, major depressive disorder, post-traumatic stress disorder (PTSD), borderline personality disorder, and anxiety disorder (20 C.F.R. §§ 404.1520(c), 416.920(c)). (R. 13.) He concluded that Ms. Mercado's diagnoses of gastroesophageal reflux disease, hypertension, carpal tunnel syndrome, and acute appendicitis had been adequately controlled with conservative measures and thus did not result in more than a minimal limitation in her ability to perform basic work activities, and so were not severe. (*Id.*)

At step three, the ALJ found that Ms. Mercado's impairments did not meet any listings. (R. 348.) He rejected her claim that she qualified for Listing 1.04, Disorders of the Spine, concluding that the record lacked any evidence of nerve root compression, spinal arachnoiditis, pseudoclaudication, or an inability to ambulate, which Ms. Mercado was required to prove in order to meet the listing. (R. 13.) He noted that he considered Ms. Mercado's allegations of Obesity and Fibromyalgia to be supported by the medical evidence, and took them both into account while nevertheless concluding that she did not meet any listings. (R. 13–14.)

The ALJ also rejected Ms. Mercado's allegations that she met the requirements for a variety of mental impairments set forth in Listings 12.04, Depressive, Bipolar, and Related Disorders, 12.06, Anxiety and Obsessive-Compulsive Disorders, 12.08, Personality and Impulse-Control Disorders, and 12.15, Trauma- and Stressor-related disorders. The ALJ concluded that Ms. Mercado had failed to demonstrate one extreme or two marked limitations in broad areas of functioning, which she was obligated to do to qualify for those listings. (R. 14.) In a detailed segment of the opinion, the ALJ carefully considered Ms. Mercado's limitations in the relevant domains and concluded that she had no more than mild or moderate limitations, and so did not satisfy the listing. (R. 14–15.)

At step four, the ALJ concluded that Ms. Mercado had the residual functional capacity to perform less than the full range of light work. (R. 15.) He concluded that she could lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently, could sit for up to six hours in an eight-hour workday, and walk or stand for up to four hours. (*Id.*) He further noted she was capable of climbing ramps and stairs but not ladders, and could occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*) She could carry out simple instructions, but could not use keyboards or interact with the public, and could only work in a location with few if any workplace changes. (R. 15.)

The ALJ came to that conclusion despite Ms. Mercado's allegations that she could not lift even a gallon of milk or stand, walk, or sit for prolonged

4

periods, and suffered from psychiatric symptoms which included disturbed sleep, concentration deficits, memory deficits, blackouts, difficulty completing tasks, crying spells, suicide attempts, difficulty leaving her home, panic attacks, paranoia, difficulty handling stress, and diminished motivation. (R. 16.) He noted that these allegations were somewhat inconsistent with Ms. Mercado's acknowledgment that she was capable of performing a range of activities of daily living, such as light housework, preparing simple meals, attending to personal care, managing money, shopping, and traveling independently. (*Id.*)

He further noted that the medical evidence did not support her claims of physical functional limitations. While there was some evidence in the form of progress notes which indicated Ms. Mercado suffered from fibromyalgia, there was no indication in her tests or evaluations that she suffered from many hallmarks of the disease, such as range of motion loss, strength deficits, sensation deficits, or positive straight leg raise tests. (R. 17.) The ALJ took into account that Ms. Mercado's doctors had elected to address her symptoms conservatively, via medication, and did not call for more invasive measures. (*Id.*)

The ALJ also noted three state agency consultative examinations by Dr. Potashnick in October 2009, Dr. Roque in November 2014, and Dr. Merlin in February 2016. All indicated Ms. Mercado suffered from generalized tenderness, but only Dr. Roque identified tender points, another hallmark of fibromyalgia. (*Id.*) The ALJ noted these doctors' conclusions that Ms. Mercado's obesity diminished her ability to squat and walk on her heels and toes, but did not cause gait abnormalities, range of motion loss, sensation deficits, strength deficits, or other limitations. (*Id.*) Drs. Roque and Merlin noted that Ms. Mercado did not appear to have functional limitations and was able to sit, stand, walk, carry objects, read, write, crouch, speak, and hear. (*Id.*) The ALJ assigned weight to the conclusions of Drs. Roque and Merlin because their conclusions were consistent with their examination findings. (*Id.*) The ALJ

5

determined that Ms. Mercado had greater limitations than those recognized by the doctors, however, because of her reported ongoing pain. (*Id.*)[3]

The ALJ thus concluded that Ms. Mercado's physical limitations indicated that she needed to be limited to light physical exertion and could not use a keyboard or frequently handle, finger, or feel with her hands. (R. 18.)

As for Ms. Mercado's mental conditions, the ALJ noted a limited record of therapy and medication management. These measures were discontinued because of non-compliance and loss of contact, but the ALJ noted that Ms. Mercado had cited insurance and financial issues at the hearing. (*Id.*) The ALJ also noted that Ms. Mercado's treating sources had indicated anxiety and depressed mood, and had performed global assessment of functioning examinations which yielded scores between 55 and 70, indicating that she had between moderately and mildly severe symptoms. (*Id.*)

The ALJ noted that Ms. Mercado was evaluated by three state agency consultative examiners: Jack Baharias, Ed. D., in November 2007, J. Theodore Brown Jr., Ph. D, in October 2009, and Kim Arrington, Psy. D., in February 2016. (R. 18.) Doctor Brown identified Ms. Mercado as suffering from below average cognitive functioning, some paranoid thinking, and depressed mood and affect, but nothing else. (*Id.*) He further assessed a global assessment of functioning score of 50–55, which indicated moderate to severe symptoms, and he concluded that Ms. Mercado should not be allowed to manage funds. (R. 19.) Drs. Baharias and Arrington, however, concluded that Ms. Mercado would be capable of managing functions and performing simple tasks. (R. 19.)

The ALJ also relied on the opinions of two state medical consultants, Christina Grand, Psy. D., and Dr. Jocelyn Fierstein, who reviewed Ms. Mercado's file and concluded that she was capable of understanding,

---

[3] State agency medical consultants also reviewed Ms. Mercado's file in February and March of 2016 and opined that her physical conditions were not severe. (R. 18.) The ALJ assigned little weight to their evaluations due to the fact that they did not treat or examine the claimant. (*Id.*)

6

remembering, and carrying out simple instructions with limited social demands. (*Id.*) The ALJ gave significant weight to these consultants, as well as Drs. Baharias and Arrington, and concluded they reflected a need for conservative mental health treatment, mood and affect issues, but no behavioral or cognitive deficits. (*Id.*) The ALJ gave less weight to the opinion of Dr. Brown, concluding that his evaluation overstated Ms. Mercado's cognitive deficit when compared to the other evaluations in the record. (*Id.*) He accorded global assessments of Ms. Mercado's functioning some weight, but discounted them because they were vague and did not constitute function-by-function evaluations of Ms. Mercado's restrictions. (*Id.*)

As to the mental limitations, then, the ALJ concluded that Ms. Mercado can work and remember and carry out simple instructions, but cannot interact with the public; she also can have occasional interactions with supervisors and coworkers in a workplace that would have few if any changes. (*Id.*) He concluded that further work limitations based on Ms. Mercado's mental limitations were not warranted because of the conservative care she had received and the "unremarkable mental status examinations of record." (*Id.*) He rejected her allegations of lack of motivation, blackouts, difficulty completing tasks, and headaches. (*Id.*)

At step five, the ALJ concluded that Ms. Mercado could not perform her past job as a data entry clerical assistant due to her limitation to less than the full range of light work involving simple tasks. He then concluded that Ms. Mercado would be capable of performing the roles of unskilled occupations such as table worker, document preparer, and final assembler, of which there were nearly four million jobs available nationally. (R. 21.)

## III. DISCUSSION

Ms. Mercado asserts that the ALJ: (1) did not adequately consider her obesity at the Step 3 medical equivalency stage and then did not consider it at all afterwards; (2) never considered her severe fibromyalgia at Step 3 and never

7

considered it in the context of a discernible work-related limitation; (3) failed to base the RFC on substantial evidence.

### A. The ALJ's Consideration of Ms. Mercado's Obesity

Ms. Mercado argues that ALJ Damille failed to adequately consider her obesity throughout the five-step analysis. She argues that ALJ Damille's opinion failed to consider her obesity in combination with any of her other ailments at step 3, and insufficiently discussed her obesity when he merely stated that he took it into account without explaining specifically how it factored into his decision. (Pl.'s Br. at 15–19.)

I agree that ALJ Damille cited Ms. Mercado's obesity, but did not discuss its effects in depth at Step Three or Four. Nevertheless, an ALJ's failure to explain an aspect of his decision is not, alone, sufficient to overturn that decision. Rather, Ms. Mercado bears the burden of demonstrating how analysis of her obesity could have affected the outcome in a manner that would have resulted in her entitlement to benefits. *Holloman v. Comm'r Soc. Sec.*, 639 Fed. Appx. 810, 814 (3d Cir. 2016) ("Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals" and thus a plaintiff must "offer[ an] explanation of how further analysis could have affected the outcome of his disability claim."); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Ms. Mercado fails to provide any explanation as to how further consideration of her obesity would have changed ALJ Damille's determination that she was entitled to benefits, and thus has not complied with *Shineski*'s requirement that she prove harmful error.

Furthermore, even though ALJ Damille did not set out the relationship obesity had to his residual functional capacity findings in great detail, he did discuss at length several doctors' analyses of Ms. Mercado's physical limitations and abilities, including her capacity to stand, walk, crouch, and many other actions. He relied on those evaluations, which focused on Ms. Mercado's actual functional capacity, to conclude that she retained some residual functional capacity for less than light work. Such evaluations, while

8

focused more on outcomes than causes, necessarily took into account the impact her obesity had on her functional capacity. Indications are that the ALJ thus sufficiently took into account the obesity factor, even if he did not discuss it in depth. His findings were supported by substantial evidence and thus I will not reverse them on appeal.

### B. The ALJ's Consideration of Ms. Mercado's Fibromyalgia

Ms. Mercado argues that ALJ Damille failed to adequately consider her fibromyalgia throughout the five-step analysis. Specifically, she asserts that the ALJ failed to consider whether her fibromyalgia would be medically equivalent to other impairments in step 3 or whether it would create work-related limitations for her residual functional capacity. (Pl.'s Br. at 20–22.)

This argument is subject to the same defect as Ms. Mercado's assertions regarding her obesity. Though ALJ Damille's explanation may have been short, he did cite and analyze this factor. Ms. Mercado has not carried her burden of proving that this constituted harmful error. *Holloman*, 639 Fed. Appx. at 814. She has simply provided no analysis showing that if the ALJ had further considered her fibromyalgia she would have been entitled to benefits.

The ALJ specifically cited and discussed substantial evidence in the record which led him to doubt that Ms. Mercado's fibromyalgia was as debilitating as she alleged. He noted that the weight of the medical evidence indicated that she did not suffer from such hallmarks of this condition as multiple trigger points, loss of range of motion, strength deficits, or sensation deficits. (R. 17.) He further noted that her symptoms were addressed by medication and that no doctor had concluded that she required more invasive measures. (*Id.*) He also took into account the reports of the state agency consultant doctors, who examined Ms. Mercado and concluded that her symptoms only limited her abilities in a few domains, including squatting and walking on her heels or toes. (*Id.*)

The ALJ perhaps could have more clearly set forth the manner in which Ms. Mercado's fibromyalgia intersected with her limitations. In light of the evidence in the record, however, I conclude that this was not an error, and that

*a fortiori* it was not a harmful error that affected the analysis or result. ALJ Damille adequately considered the evidence, which provided substantial support for the conclusion that Ms. Mercado was capable of limited light work, based his conclusions on a fair reading of the statements of numerous medical doctors who evaluated Ms. Mercado, and concluded that her physical conditions did not impose significant functional limitations. (R. 17–18.) Indeed, ALJ Damille departed from the weight of medical opinion only in order to find that Ms. Mercado should have *further* restrictions than those suggested by Drs. Roque and Merlin on the ground that she had ongoing pain. (R. 18.)

In light of the substantial evidence in support of ALJ Damille's decision and Ms. Mercado's failure to demonstrate that further analysis would have resulted in a decision in her favor, I will not reverse on this ground.

### C. The ALJ's Residual Functional Capacity Evaluation

Ms. Mercado argues that the ALJ lacked substantial evidence in support of his determination that she was capable of less than the full range of light work. She argues that there is insufficient evidence to support the finding that she could understand, remember, and carry out simple instructions was not supported by the record. She asserts that the ALJ ignored Dr. Karen Way, her treating mental health professional, who diagnosed her with panic disorder, major depressive disorder, and borderline personality disorder, and she asserts that ALJ Damille ignored evidence in the record regarding her traumatic childhood, which included multiple suicide attempts, sexual abuse, running away from home, pregnancy at age 14, and that her child attempted to commit suicide and was then put in a foster home by DYFS. (Pl.'s Br. 28–32.) She also contests the ALJ's recitation of Dr. Baharias's evaluation, noting that the ALJ wrote that the doctor concluded she was "capable of managing functions," when in fact the doctor only stated she was capable of managing her benefits. (Pl.'s Br. at 33.) She asserts ALJ Damille failed to adequately consider her fibromyalgia, chronic pain, and back impairment, and was inconsistent in his consideration of her carpal tunnel: she asserts the ALJ could not have both

10

concluded that she was capable of pushing, pulling, lifting and carrying 10 to 20 pounds but also that her carpal tunnel was not severe. (R. 34.)

Much of Ms. Mercado's argument concerning her RFC is a recasting of her arguments regarding the ALJ's findings as to her limitations. Those, however, I have already upheld against the challenges she has brought. I will briefly supplement the discussion as follows.

As to Ms. Mercado's mental ailments, I find that there was substantial evidence in the record to support ALJ Damille's conclusions. He relied on three state agency expert psychologist consultative examiners, as well as two state agency expert psychologist reviewers, most of whom concluded that Ms. Mercado did not suffer from significant cognitive deficits and that she would be capable of managing simple tasks and simple instructions in work settings. (R. 18–19.) Though Dr. Brown concluded that Ms. Mercado should not be permitted to manage funds, Dr. Baharias thought that she was capable of doing so. (R. 19.) Drs. Arrington, Grand, and Fierstein all agreed that Ms. Mercado could perform simple tasks in a work environment. (*Id.*) While Dr. Brown found Ms. Mercado suffered from moderate to severe symptoms in terms of general functioning, the ALJ discounted his conclusion in light of the other examiners, a conclusion which finds substantial support in the record. (*Id.*) ALJ Damille further reasonably considered Ms. Mercado's admission that she was able to perform a range of activities of daily living such as preparing simple meals, light housework, managing money, and attending to her personal care, among other things. (*Id.*) Lastly, ALJ Damille fairly rejected Ms. Mercado's allegations of blackouts, lack of motivation, and inability to complete tasks in light of the absence of any support for those claims in the mental status examination records. (*Id.*)

Contrary to Ms. Mercado's assertions, ALJ Damille did not ignore Dr. Way, one of Ms. Mercado's treating physicians. True, the ALJ did not mention Dr. Way by name, but he specifically referred to her treatment notes and cited them for his conclusion that Ms. Mercado's mental status examinations only indicated anxious and depressed mood affect without cognitive deficits,

behavioral abnormalities, or thought abnormalities. (R. 18 (citing portion of Exh. 8F to ALJ decision which was comprised of Dr. Way's treatment notes).) Furthermore, there is no indication that further consideration of Dr. Way's evaluation would have changed ALJ Damille's findings, as Dr. Way did not come to any conclusions which contradict those set forth by Drs. Baharias, Brown, or Arrington. (*See* R. 419–32.) While there is no reason to doubt that Ms. Mercado suffered numerous childhood traumas, there is little evidence in the record indicating that she is presently unable to work due to mental limitations, and there is substantial evidence to support the ALJ's conclusion that she remains capable of performing limited job functions. (*See* R. 343–46, 399–402, 546–49 (evaluations of Drs. Baharias, Brown, and Arrington).) I therefore agree with ALJ Damille's conclusions in that regard.

I further reject Ms. Mercado's assertion that the ALJ's decision must be reversed simply because it accidentally identified Dr. Baharias as stating that Ms. Mercado could manage "functions" rather than "funds." As set forth above, there was substantial evidence in the record that supported the ALJ's conclusions irrespective of this minor error.

I reject Ms. Mercado's that I re-weigh the evidence in favor of limitations based on her fibromyalgia, back impairment and chronic pain. That exceeds the court's review function, which is simply to confirm that the ALJ validly performed that weighing and that his decision is supported by substantial evidence.

Finally, I reject Ms. Mercado's assertion that ALJ Damille was inconsistent in concluding both that she had non-severe carpal tunnel syndrome and that she was able to push, pull, lift and carry 10-to-20 pounds. The two activities are not comparable: it was entirely consistent with the evidence for the ALJ to conclude that Ms. Mercado could not engage in fine motor skills such as typing or frequently handling, fingering, and feeling, as he did, but at the same time conclude that she could grip and carry heavier, but still relatively lightweight, objects. (R. 18.)

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

A separate order will issue.

Dated: December 30, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**